RECEIVED
JAN 0 6 2011
AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

1/6/2011
12:30 p.m.

EMS/2008R01411

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Crim. No. 09-722 (JAP) |
|---|---|---|
| v. | : | |
| | : | 18 U.S.C. §§ 1832, 1343 |
| YAN ZHU, | : | and 2 |
| a/k/a "Wesley Zhu," | : | |
| a/k/a "Westerly Zhu" | : | **S U P E R S E D I N G** |
| | : | **I N D I C T M E N T** |

The Grand Jury in and for the District of New Jersey, sitting at Trenton, charges:

Company A and the Subject System

1.  At all times relevant hereto:

    a.  Company A was a software and consulting company, with its principal office in Mercer County, New Jersey. Company A's core business was the development, support, and implementation of computer systems and software for environmental applications. Company A's primary customer base was federal, state, and local environmental regulatory agencies. One product that Company A developed was a comprehensive hazardous waste information management system. The purpose of this product was to allow a Company A customer, such as an environmental regulatory agency, as well as entities that interact with the environmental regulatory agency, such as hazardous waste producers and shippers, to enter, organize, and view certain data

regarding pollution and hazardous waste within that agency's jurisdiction. Company A initially developed this system (the "Subject System") specifically for sale in the People's Republic of China ("China"). In connection with the development of the Subject System, Company A developed a database application that Company A intended to utilize in the Subject System as well as in other Company A products (the "Database Application"). The Subject System and the Database Application were products produced for and placed in interstate and foreign commerce.

     b. The Subject System and the Database Application were and are proprietary systems. As such, Company A considered the source code, the database, and the database and software designs, schema, logics, and architecture for the Subject System and the Database Application to be trade secrets and confidential and proprietary information. Company A took reasonable steps to keep its trade secrets and confidential and proprietary information secret. In addition, Company A's trade secrets and confidential and proprietary information derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public.

The Defendant and Certain Co-Conspirators

     2. At all times relevant hereto:

          a. The defendant, YAN ZHU, a/k/a "Wesley Zhu," a/k/a

"Westerly Zhu," was a citizen of China residing in New Jersey pursuant to a work visa. In or about April, 2006, Company A hired defendant ZHU as a Senior Environmental Engineer. As a condition of his employment at Company A, ZHU signed an Employment, Confidentiality, and Non-Disclosure Agreement (the "Confidentiality Agreement"). Pursuant to this agreement, which defendant ZHU signed on or about May 1, 2006, defendant ZHU promised not to disclose any Company A confidential information, which specifically included Company A computer programs and software, and to return any confidential information to Company A if he separated from the company. Defendant ZHU ultimately became the lead project engineer on the Subject System project.

b. On or about July 17, 2008, Company A terminated defendant ZHU's employment. On or about July 18, 2008, in connection with his termination from Company A, defendant ZHU signed a document in which he agreed to return all confidential information to Company A, including product source codes. In this document, defendant ZHU further represented that he had not provided Company A product source codes to anyone, and that no copies of Company A confidential information, including, without limitation, copies of Company A source codes, power points, design documents, or system guides, remained in his possession.

c. Co-Conspirator #1 ("CC-1") was a Chinese national residing in China. In or about November, 2006, Company A, based

upon an introduction by defendant ZHU, hired CC-1 to serve as Company A's sales representative in China. On or about August 5, 2007, Company A rented office space for CC-1 in the Science and Technology High-Tech Zone in Xian City, Shanxi Province, China (the "Company A Xian Office").

      d.   Co-Conspirator #2 ("CC-2") was an individual residing in China who was an associate of defendant ZHU and CC-1.

      e.   Company X was a Chinese company that purported to be in the business of selling computer systems and software for environmental applications to Chinese governmental entities. In conducting its business, Company X used the address of the Company A Xian Office, the office space that Company A rented for CC-1. Defendant ZHU, CC-1, CC-2, and others were all associated with Company X.

Company A's Sales and Efforts To Sell the Subject System in China

      3.   On or about July 25, 2007, Company A entered into a contract with Shanxi Province's environmental protection agency ("Shanxi EPA") to provide the Subject System, as well as related training and support services, to Shanxi EPA (the "Shanxi Contract"). CC-1 acted as Company A's sales agent in connection with the Shanxi Contract.

      4.   In or about November, 2007, a Company A representative forwarded contact information to CC-1, as Company A's sales

representative in China, for a representative of the Hebei Province, China, environmental protection agency ("Hebei EPA"), who had expressed an interest in the Subject System. Company A, however, never entered into a contractual relationship with Hebei EPA.

## COUNT ONE

(Conspiracy to Steal Trade Secrets)

5.  The allegations set forth in Paragraphs 1 through 4 of this Indictment are re-alleged and incorporated herein.

6.  From in or about December, 2007, until in or about December, 2008, at Mercer County, in the District of New Jersey, and elsewhere, the defendant,

> YAN ZHU,
> a/k/a "Wesley Zhu,"
> a/k/a "Westerly Zhu"

knowingly conspired with CC-1, CC-2, and others, with intent to convert a trade secret, that is related to and included in a product that is produced for and placed in interstate and foreign commerce, namely Company A's Subject System and Database Application, to the economic benefit of anyone other than Company A, the owner of the trade secret, and, intending and knowing that the offense would injure Company A, to steal, and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice, and deception obtain such information, in violation of Title 18, United States Code, Section 1832(a)(1).

The Object of The Conspiracy

7. It was the object of the conspiracy for the defendant, YAN ZHU, a/k/a "Wesley Zhu," a/k/a "Westerly Zhu," and his co-conspirators to steal Company A's trade secrets and confidential and proprietary information relating to the Subject System and the Database Application, and use that information to modify the Subject System, and market, sell, and attempt to sell that modified version of the Subject System to governmental environmental regulatory agencies in China.

Manner and Means of The Conspiracy

8. Among the manner and means employed by defendant ZHU and his co-conspirators to carry out the conspiracy and effect its unlawful object were the following:

a. It was part of the conspiracy that defendant ZHU used his position with Company A to obtain access to Company A's trade secrets and proprietary and confidential information, including computer programming source codes, for the Subject System and the Database Application.

b. It was part of the conspiracy that defendant ZHU, after obtaining Company A's trade secrets and proprietary and confidential information relating to the Subject System and the Database Application, transmitted that information outside of Company A using various means, including e-mailing it to his

personal e-mail account, e-mailing it to his co-conspirators in China, and posting it to internet-based document sharing applications accessible by his co-conspirators in China, all in violation of his Confidentiality Agreement with Company A.

   c. It was part of the conspiracy that defendant ZHU and his co-conspirators used the trade secrets and confidential and proprietary information that defendant ZHU stole from Company A to create a modified version of the Subject System.

   d. It was part of the conspiracy that defendant ZHU and his co-conspirators used Company X to market, attempt to sell, and sell a modified version of the Subject System to governmental environmental regulatory agencies in China.

   e. It was part of the conspiracy that defendant ZHU and his co-conspirators communicated with one another using various means, including e-mail, internet-based chat services, and internet-based voice communications services.

   f. It was part of the conspiracy that CC-1 misappropriated the Company A Xian Office that Company A had rented for CC-1 as Company A's Chinese sales representative, and used that office space for Company X business.

   g. It was part of the conspiracy that, upon his termination from Company A, defendant ZHU falsely represented to Company A that he had returned all Company A confidential information to Company A, and had not disseminated Company A

confidential information outside of Company A.

      h.  It was part of the conspiracy that defendant ZHU and his co-conspirators bid on and were awarded a contract to provide a modified version of the Subject System to Hebei EPA, for a fraction of the price that Company A intended to charge Hebei EPA for the Subject System.

      i.  It was part of the conspiracy that defendant ZHU and his co-conspirators placed and caused to be placed a link to Company X's modified version of the Subject System on Shanxi EPA's public internet site.

      j.  It was part of the conspiracy that defendant ZHU and his co-conspirators took steps to avoid detection of their illegal activities by Company A and others.

Overt Acts

      9.  In furtherance of the conspiracy and to effect its unlawful object, defendant ZHU and his co-conspirators committed, and caused to be committed, the following overt acts, in the District of New Jersey and elsewhere:

      a.  On or about January 14, 2008, defendant ZHU sent an e-mail to CC-2.  In the body of this e-mail, defendant ZHU states, in sum and in substance, that it is not convenient for defendant ZHU to speak to CC-2 while defendant ZHU is in the Company A office, and that it is defendant ZHU's pleasure to work

with CC-2 and others. As an attachment to this e-mail, defendant ZHU sent CC-2 a Company A deployment guide for installing and configuring the Subject System.

  b. On or about January 24, 2008, defendant ZHU sent CC-2 two e-mails, attaching the Company A source code for the Subject System and the Database Application, and the Company A screen design for the Subject System website.

  c. On or about January 28, 2008, defendant ZHU sent CC-2 an e-mail, attaching Company A design documents for the Database Application, as well as database source code, structure, and programming.

  d. On or about January 28, 2008, CC-2 sent an e-mail to defendant ZHU, CC-1, and others, to set up an internet-based chat.

  e. On or about March 12, 2008, defendant ZHU sent an e-mail, from his Company A e-mail account to his personal e-mail account, attaching a design document for the Database Application. The design document was entitled "A Complete Database Document," bore the Company A name and logo, and was marked "For Internal Use Only" in bold-faced type.

  f. On or about March 12, 2008, defendant ZHU sent an e-mail to CC-2 and others in China, attaching the Database Application design document referred to in paragraph 9(e) above, as well as defendant ZHU's resume and graduate school transcript.

   g. On or about March 18, 2008, defendant ZHU sent a series of e-mails to CC-2 attaching Company A database design schema, detailed design requirements, programming flows, web page logics, and form and user interface logics, for the Subject System.

   h. On or about March 19, 2008, defendant ZHU sent an e-mail to CC-2, directing CC-2 not to contact defendant ZHU through defendant ZHU's Company A e-mail account. In this e-mail, defendant ZHU stated, in sum and in substance, that he might have mistakenly used his Company A e-mail account to communicate with CC-2 the previous day.

   i. On or about March 28, 2008, defendant ZHU sent an e-mail, from his Company A e-mail account to his personal e-mail account, attaching Company A source codes for a demonstration data script for the Subject System.

   j. On or about May 2, 2008, defendant ZHU sent an e-mail, from his Company A e-mail account to his personal e-mail account, containing Company A source codes for the Subject System.

   k. On or about May 5, 2008, defendant ZHU sent an e-mail, from his Company A e-mail account to his personal e-mail account, attaching approximately 187 pages of confidential and proprietary Company A data pertaining to the Subject System.

   l. On or about May 5, 2008, defendant ZHU sent an e-

mail, from his Company A e-mail account to his personal e-mail account, attaching approximately 2077 pages of confidential and proprietary Company A data pertaining to the Subject System.

  m. On or about June 11, 2008, defendant ZHU wire transferred $9,000 from his bank account in the United States to CC-1's bank account in China.

  n. On or about June 16, 2008, CC-1 sent an e-mail to defendant ZHU and CC-2 with currency conversion calculations for defendant ZHU's June 11, 2008, wire transfer to CC-1.

  o. On or about July 1, 2008, defendant ZHU sent an e-mail to CC-1, CC-2, and a third individual in China, attaching a potential business logo for Company X.

  p. On or about July 15, 2008, CC-1 misappropriated the Company A Xian Office that Company A rented for him, by locking a Company A representative out of the office.

  q. On or about July 17, 2008, the same day that Company A terminated his employment, in part for sending Company A trade secret and confidential and proprietary information to his personal e-mail account, defendant ZHU created a new personal e-mail account.

  r. On or about July 17, 2008, defendant ZHU sent an e-mail to CC-1, CC-2, and a third individual, notifying them of his new personal e-mail account, and stating, in sum and in substance, that there were some issues with his previous personal

e-mail account, and that it cannot be used any more.

s. On or about July 18, 2008, in connection with Company A's termination of his employment, defendant ZHU signed a memorandum in which he falsely represented that he had returned all Company A trade secrets and confidential and proprietary information to Company A, and that he had not disseminated Company A trade secrets and confidential and proprietary information to any other party.

t. On or about July 18, 2008, in response to Company A's demand that he provide Company A with access to all of his computer equipment and storage devices to check for Company A secrets and confidential and proprietary information, defendant ZHU provided Company A with one desktop computer for inspection. Inspection of this computer revealed that it contained no files other than the original operating system.

u. On or about September 3, 2008, Company X placed a job posting on a public internet web site. In this posting, Company X listed CC-2 as its contact person, and listed the Company A Xian Office as its business address.

v. On or about October 29, 2008, CC-2 sent an e-mail to several individuals, including defendant ZHU, stating that they had won the Hebei EPA project bid. CC-2's e-mail included a link to a public web site reflecting that Hebei EPA awarded the project to Company X for approximately 1,090,000 Yuan,

approximately one-tenth of what Company A had expected to charge for the Subject System.

    w.  In or about late October or early November, 2008, Company X placed and caused to be placed a link on the Shanxi EPA public web site that directed users to a site containing Company X's modified version of the Subject System.  The Subject System was modified in several respects, including but not limited to layout and format.  In addition, Company X replaced Company A's contact information displayed on the program with Company X's information, including Company X's name and the address of the Company A Xian Office.

    All in violation of Title 18, United States Code, Section 1832(a)(5).

## COUNTS TWO AND THREE

(Theft of Trade Secrets)

10. The allegations set forth in Paragraphs 1 through 4, 8, and 9 of Count One of this Indictment are re-alleged and incorporated herein.

11. On or about the dates set forth below, in the District of New Jersey and elsewhere, the defendant,

> YAN ZHU,
> a/k/a "Wesley Zhu,"
> a/k/a "Westerly Zhu,"

with intent to convert a trade secret, that is related to and included in a product that is produced for and placed in interstate and foreign commerce, namely Company A's Subject System and Database Application, to the economic benefit of anyone other than Company A, the owner of the trade secret, and, intending and knowing that the offense would injure Company A, did knowingly and without authorization copy, duplicate, download, upload, replicate, transmit, deliver, send, mail, communicate and convey the following information:

| Count | Date | Trade Secret |
|---|---|---|
| 2 | 1/24/2008 | E-mail from defendant ZHU to CC-2, attaching Company A source code for the Subject System. |
| 3 | 1/24/2008 | E-mail from defendant ZHU to CC-2, attaching Company A source code for the Subject System. |

All in violation of Title 18, United States Code, Section 1832(a)(2), and Title 18, United States Code, Section 2.

## COUNTS FOUR THROUGH TEN

(Wire Fraud)

1. The allegations set forth in Paragraphs 1 through 4, 8, and 9 of Count One of this Indictment are re-alleged and incorporated herein.

2. On or about the dates set forth below, in Mercer County, in the District of New Jersey and elsewhere, the defendant,

YAN ZHU,
a/k/a "Wesley Zhu,"
a/k/a "Westerly Zhu,"

having knowingly devised and intending to devise a scheme and artifice to defraud Company A of money and property, namely, the Subject System and Database Application, and proprietary and confidential business information related to the Subject System and Database Application, by means of materially false and fraudulent pretenses, representations, and promises, did, for the purpose of executing and attempting to execute the scheme and artifice to defraud, knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, as set forth below:

| Count | Date | Interstate Wire Communication |
|---|---|---|
| 4 | 1/14/2008 | E-mail from defendant ZHU to CC-2, attaching Company A deployment guide for installing and configuring the Subject System. |
| 5 | 1/28/2008 | E-mail from defendant ZHU to CC-2, attaching Company A design documents and source code for the Database Application. |
| 6 | 3/12/2008 | E-mail from defendant ZHU to CC-2 and others in China, attaching Company A Database Application design document. |
| 7 | 3/18/2008 | E-mail from defendant ZHU to CC-2, attaching Company A waste profile design schema for the Subject System. |
| 8 | 3/18/2008 | E-mail from defendant ZHU to CC-2, attaching Company A logics and a preliminary functional requirement specification for the waste profile module of the Subject System. |
| 9 | 3/18/2008 | E-mail from defendant ZHU to CC-2, attaching Company A web page logics for the Subject System. |
| 10 | 3/18/2008 | E-mail from defendant ZHU to CC-2, attaching Company A form and user interface logics for the Subject System. |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

A TRUE BILL

_Paul J. Fishman_
PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 09-722 (JAP)

**United States District Court
District of New Jersey**

UNITED STATES OF AMERICA

v.

YAN ZHU
a/k/a "Wesley Zhu"
a/k/a "Westerly Zhu"

**SUPERSEDING INDICTMENT FOR**

18 U.S.C. §§ 1832, 1343, and 2

A True Bill,



**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

**ERIC M. SCHWEIKER**
*Assistant U.S. Attorney*
*402 East State Street, Room 430*
*Trenton, NJ 08608*
*(609) 989-2190*