NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal No. 09-00722 (JAP) |
| v. | **OPINION** |
| YAN ZHU, | |
| Defendant. | |

PISANO, District Judge.

A jury trial was held in this criminal case from March 14, 2011, until March 31, 2011. On April 6, 2011, the jury returned a verdict of not-guilty on one count of conspiracy to steal trade secrets (count one of the superseding indictment), not-guilty on two counts of theft of trade secrets (counts two and three of the superseding indictment) and guilty on seven counts of wire fraud (counts four through ten of the superseding indictment). After the verdict was announced by the jury, the Court polled all of the jurors, each of whom stated that they agreed with the jury's verdict. The Defendant moved to set aside the guilty verdict pursuant to Federal Rule of Criminal Procedure 29(c), and for a new trial pursuant to Federal Rule of Criminal Procedure 33. The United States of America opposed the motions. For the reasons set forth in the Opinion filed on August 4, 2011, the Defendant's motions were denied. Presently before the Court is Defendant's Motion for Reconsideration of the denial of these post-trial motions. For the reasons set forth herein, this Motion must be denied.

I.  **FACTUAL BACKGROUND** [1]

The Defendant was employed as a senior engineer at enfoTech, Inc., a company that develops and supports environmental software primarily for governmental entities ("enfoTech" or the "Company").  In connection with his employment at enfoTech, the Defendant signed a confidentiality agreement, which prohibited the unauthorized disclosure of enfoTech's confidential business information.  During his employment at enfoTech, the Defendant reported directly to Tony Jeng ("Jeng"), a co-owner of the Company.

In August of 2006, the Defendant introduced Jeng to his cousin-in-law, Wanqi Tang ("Tang"), who had access to government officials in the Shaanxi Province in China.  Pursuant to a cooperation agreement between Jeng and Tang, Tang formed a company in China called Green Innovation Technology ("Green Innovation"), which was to be the Chinese counterpart to enfoTech.  In 2007, the Company entered into a contract with the Shaanxi Province in China to develop a software program called eWastePro.  The Province made its initial payment several months late.   Tang asked enfoTech for 800,000 Yen in "special marketing expenses" in connection with the Shaanxi Province contract.  The Company agreed to this request and allocated that amount to Tang out of the first payment made by the Shaanxi Province in November of 2007.  Jeng testified that Tang had told him previously that "it's custom, normal practice" to pay bribes to government officials in China.  Jeng testified that he told Tang that such bribes were illegal and that he could not pay them.

In October of 2007, the Defendant, Jeng and other enfoTech employees traveled to China to demonstrate the eWastePro software program to the Shaanxi Province officials.  The parties submitted conflicting evidence at trial as to the functionality of the eWastePro software program

---

[1] A brief synopsis of the factual background is provided here; greater detail, along with specific citations to the record, may be found in this Court's Opinion accompanying its original denial of Defendant's post-trial motions on August 4, 2011.  *United States v. Yan Zhu*, No. 09-00722, 2011 WL 3422861, at *7 (D.N.J. Aug. 4, 2011).

at that time.  The parties also presented conflicting evidence about how much work was done on eWastePro after enfoTech returned from the demonstration in China.  The Defendant claimed that enfoTech misrepresented the functionality of its product at the demonstration, and subsequently had no intention of carrying out its obligation to complete the product.  Jeng testified that he traveled to Shaanxi Province in January of 2008 for an additional demonstration, and to arrange for an extension of the contract so that the Province could get funding for the additional payments.  According to Jeng, enfoTech only stopped work on the eWastePro program in April of 2008 because the Shaanxi officials would not accept delivery of the completed product.

      Towards the end of 2007 and beginning of 2008, the Defendant asked Liu and other enfoTech programmers about the functionality of the eWastePro program.  The Defendant claims that these programmers did not provide him with satisfactory responses.  The Defendant testified that he then reached out to Tang to help him evaluate the functionality of the eWastePro software.  Tang subsequently introduced the Defendant to He Weiqi ("Weiqi"), who was a computer technician working for Green Innovation.  From January through May, 2008, Defendant emailed Weiqi many eWastepro materials, including enfoTech's deployment guide, design documents, source code, waste profile design schema, web page logics, form and user interface logics, and graphic design.  Defendant made efforts to keep this entire correspondence on his personal email address.

      Jeng became suspicious of the Defendant in and around April and May of 2008.  As a result, the Company began to monitor the Defendant's enfoTech email account.  Subsequently, Jeng became aware that the Defendant had sent emails containing confidential business information to his personal email account.  In July of 2008, enfoTech terminated the Defendant

for sending its proprietary information to persons outside the Company. During the Defendant's exit interview, Jeng asked him whether he had sent enfoTech's confidential business information to anyone outside the company and he denied having done so. The Defendant admitted during trial that he had lied to enfoTech about this. The Defendant also admitted that, when asked to bring his personal computers for inspection, he deleted information from one computer, and did not bring the other computers for inspection at all.

Meanwhile, Green Innovation had developed an environmental software program called eManage, which later appeared on the Shaanxi Province website. The Defendant's expert testified that, in her opinion, eWastePro and eManage were not the same program and, with the exception of the front end web page visual code, there were very few similarities between the programs. Green Innovation also developed an environmental software program for the Hebei Province in China. The Defendant admitted to working on materials related to the Hebei Province for Green Innovation in March or April of 2008, while he was still working for enfoTech.

On January 6, 2011, Yan Zhu was charged in a ten count superseding indictment with conspiracy to steal trade secrets, theft of trade secrets and wire fraud. On April 6, 2011, the jury returned a verdict of not-guilty on one count of conspiracy to steal trade secrets, not-guilty on two counts of theft of trade secrets, and guilty on seven counts of wire fraud. After the verdict was announced by the jury, the Court polled all of the jurors, each of whom stated that they agreed with the jury's verdict.

## II. LEGAL STANDARD AND DISCUSSION

Reconsideration[2] is an extraordinary remedy that is normally appropriate only when one of the following three grounds for relief is established: "(1) 'an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice.'" *Carmichael v. Everson*, Civ. No. 03-4787, 2004 WL 1587894, *1 (D.N.J. May 21, 2004) (quoting *Database America, Inc. v. Bellsouth Advertising & Pub. Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993); *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995)).  The party seeking reconsideration bears a heavy burden, and cannot merely "restate arguments which the court has already considered" or assert a disagreement with the Court's decision.  *Tormasi v. Hayman*, Civ. No. 08-05886, 2011 WL 890676, at *14 (D.N.J. Mar. 14, 2011).  *See also G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990); *Carteret Savings Bank, F.A. v. Shushan,* 721 F.Supp. 705, 709 (D.N.J. 1989).  Because the Defendant has not alleged that a change in the law has occurred or that new evidence has become available since the Court's August 4, 2011 disposition, Defendant must show that reconsideration is "necessary to correct a clear error of law or prevent manifest injustice." *Carmichael*, 2004 WL 1587894, at *1.

As an initial matter, the Court notes that this Motion was filed after the strict fourteen-day deadline required by Local Civil Rule 7(i).  It is, therefore, untimely, and the Defendant has offered no explanation to the Court that justifies relaxing this deadline.  *See Tormasi*, 2011 WL 890676, at *14.  As described below, the Motion is also meritless; Defendant has not met the high burden of establishing adequate grounds for reconsideration.

---

[2] The criminal rules have incorporated the civil standard governing reconsideration motions. L. Crim. R. 1.1 (incorporating L. Civ. R. 7.1(i)).

5

### A.     Rule 29(c) Motion

Pursuant to the Federal Rules of Criminal Procedure, if a jury returns a guilty verdict against a defendant, a court may set aside a guilty verdict and enter an acquittal. Fed.R.Crim.Pro. 29(c).  The Court applies "a 'particularly deferential' standard of review to a challenge to the sufficiency of evidence supporting a jury verdict." *United States v. Peppers,* 302 F.3d 120, 125 (3d Cir. 2002) (quoting *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998)).  In considering a motion for acquittal pursuant to Rule 29(c), the Court must "determine whether the evidence submitted at trial, 'when viewed in the light most favorable to the government, would allow a rational trier of fact to convict.'" *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001) (quoting *United States v. Helbling*, 209 F.3d 226, 238 (3d Cir. 2000).

The federal wire fraud statute prohibits the use of electronic transmissions to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."  18 U.S.C. § 1343.  "To prove . . . wire fraud, the evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of . . . interstate wire communications in furtherance of the scheme." *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004) (internal quotation omitted).  In addition, the object of the scheme to defraud must be a "traditionally recognized property right." *Id*. (citing *United States v. Henry,* 29 F.3d 112, 115 (3d Cir. 1994)).  The Third Circuit has broadly defined a "scheme to defraud" as involving any effort at deceit which aims, in part, to deprive another of money or property. *Hedaithy,* 392 F.3d at 590-91.

The Defendant argues in his Motion for Reconsideration that the Court erred by finding that the material misrepresentation element was "satisfied by an intentional breach of an express

6

promise." Defendant states that the government only offered evidence to support breach of the promise and concealment of the breach, which does not amount to a misrepresentation under the law. Defendant claims that "the concealing of misconduct" is not "an active misrepresentation as envisioned by [*United States v. Frankel*, 721 F.2d 917, 921 (3d Cir. 1983)]." Defendant acknowledges that a fraudulent scheme "need not involve affirmative misrepresentation." *United States v. Stackpole,* 64 Fed.Appx. 842, 842-43 (3d Cir. 2003) (quoting *Kehr Packages, Inc. v. Fidelcor,* 926 F.2d 1406, 1415 (3d Cir. 1991)). However, Defendant urges that once the government charges affirmative misrepresentation, it must be proven.

Defendant argues that the government limited itself to "active misrepresentation" by using the following language in its superseding indictment: a "scheme and artifice to defraud . . . by means of materially false and fraudulent pretenses, representations and promises . . . ." The Defendant believes that this language is so limiting as to distinguish it from cases in which "active" or affirmative misrepresentation was not required. This reflects an extremely narrow reading of both the indictment and the case law, and is substantially addressed in the Court's prior Opinion. However, the Court offers the following to clarify this issue.

The indictment contains the same charges that are described in the case law to include the more passive forms of misrepresentation. For example, the Third Circuit has held that "*fraudulent representations* . . . may be effected by deceitful statements of half-truths or the concealment of material facts . . . ." *United States v. Olatunji*, 872 F.2d 1161, 1167 (3d Cir. 1989) (emphasis added) (quoting *United States v. Allen,* 554 F.2d 398, 410 (10th Cir. 1977)).[3] The indictment, similarly, charges the Defendant with "false and fraudulent pretenses,

---

[3] Defendant cites this case for the proposition that the government must prove affirmative representations where they have been specifically charged. However, the cited language actually discusses whether or not the fraud statute requires proof of any representations at all, whether affirmative or by omission. The court found that the government had charged some form of representation, not that it had limited its case to *affirmative* representation. *Olatunji*, 872 F.2d at 1165-66 n.3.

representations or promises." Thus, the government did not limit its own case as the Defendant urges. Regarding the evidence considered by the jury, the Court's Opinion reads:

> Viewed in the light most favorable to the Government, the evidence presented at trial shows that the Defendant engaged in a plan to send confidential business information to Green Innovation in violation of the promises he made in the Confidentiality Agreement. The evidence shows that, instead of simply emailing the confidential business information to Green Innovation from his enfoTech email account, the Defendant sent the information from a separate, personal email account in order to conceal his actions from enfoTech. The evidence further shows that the Defendant sent the confidential business information to Green Innovation knowing that he was not supposed to do so.

*United States v. Yan Zhu*, No. 09-00722, 2011 WL 3422861, at *7 (D.N.J. Aug. 4, 2011). The Defendant has not meaningfully refuted the Court's finding that a "reasonable juror could find that these broken promises and acts of concealment constituted false or fraudulent pretense, representations or promises." *Id.*

The Defendant also argues that an express promise to perform that eventually goes unfulfilled does not suffice as a false or fraudulent promise as a matter of law. He argues that the government must show that he intended not to perform at the time he signed the agreement, citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1186 (3d Cir. 1993); *Van Dam Egg Co. v Allendale Farms Inc.*, 489 A2d 1209, 1211 (N.J. Super. App. Div. 1985); and *United States v. Quiles*, 618 F.3d 383 n.13 (3d Cir. 2010)). However, the Defendant's signing of the confidentiality agreement was not, as the Defendant claims, the sole misrepresentation in the record. The agreement was relevant to show the understanding between the parties regarding the Defendant's continuing obligation to keep enfoTech's proprietary information confidential. The confidentiality agreement was not the fraudulent scheme itself, but rather was evidence of the express obligation that was violated.

The Defendant also claims that the Court misconstrued his argument that the exit statement was immaterial to the scheme as an argument that enfoTech did not rely on the exit statement. The Defendant had claimed that enfoTech did not rely on his exit statement as part of his immateriality argument. Here, the Defendant reiterates his contention that the exit statement could not have been material, i.e. a means of effectuating the scheme, because that scheme had already been carried out. Again, however, the Defendant is mistaken in focusing on the confidentiality agreement and the exit statement as the only misrepresentations in the record. As discussed above, a reasonable jury could have found that the pattern of concealment and omissions on the Defendant's part were material to the scheme depriving enfoTech of its property. The written confidentiality agreement and exit statement were never presented as comprising the entire scheme. Rather, they represent the Defendant and enfoTech's mutual understanding regarding confidentiality. They were only two pieces of the government's case proving that the Defendant made material misrepresentations in order to deprive enfoTech of the exclusive use of confidential information.

Finally, the Defendant cursorily repeats his claim that the Court's jury instructions were incorrect or incomplete as to the materiality of the Defendant's representations to the fraudulent scheme. The Defendant has not raised any point in this Motion for Reconsideration that has not already been addressed by the Court's Opinion disposing of the original motions. The Court need not revisit its reasoning here.

As discussed above and in this Court's prior Opinion, a reasonable jury could find that Defendant's actions in concealment and omissions in the course of his relationship with his employer constituted fraudulent misrepresentations.

### B. <u>Rule 33 Motion</u>

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33. The Court may order a new trial "only if it 'believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted.'" *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (quoting *United States v. Santos,* 20 F.3d 280, 285 (7th Cir. 1994)). In considering a motion for a new trial pursuant to Rule 33, the Court "exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). These motions "are not favored and should be 'granted sparingly and only in exceptional cases.'" *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting *Gov't of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d Cir. 1987)).

The Defendant has essentially repackaged his argument based on "newly discovered evidence" suggesting that Jeng lied to the Court about his willingness to pay bribes to Chinese government officials. The Court has already decided that

> [t]here is no exculpatory connection between the newly discovered evidence and the evidence presented at trial as there remains a total lack of support for the suggestion that the Defendant was reasonable in believing that enfoTech was not going to fulfill its contract with the Shaanxi Province because enfoTech no longer wanted to pay kickbacks to the Shaanxi Province officials.

*Yan Zhu*, 2011 WL 3422861, at *12. Thus, the Defendant now focuses entirely on the potential for impeachment of Jeng, arguing that his willingness to lie to government bodies is directly related to the relative credibility of Jeng's and Defendant's versions of events. The Defendant argues that impeaching Jeng would "throw[] severe doubt on the truthfulness of critical inculpatory evidence that had been introduced at trial." *United States v. Quiles*, 618 F.3d 383, 393 (3d Cir. 2010). Specifically, the Defendant argues that the government's case was "based

largely on Jeng's testimony," and therefore that the newly discovered evidence impeaching Jeng would have made the jury far more likely to subscribe to Defendant's version of events in which he lacked fraudulent intent.

The potentially impeaching nature of this newly discovered evidence does not substantially add to the Defendant's arguments made in support of his original Rule 33 motion. Considering the limited nature of the impeachment along with the entire weight of the evidence at trial, the Court cannot agree with Defendant that the impeaching effect of this evidence would have likely affected the outcome.  As stated in our prior Opinion, "the Defendant's version of the evidence could be plausible, [but] the jury found the Defendant guilty and the Court finds that there was sufficient evidence presented at trial to support that verdict."  *Yan Zhu*, 2011 WL 3422861, at *11.

### III.  CONCLUSION

For the reasons above, the Defendant's Motion for Reconsideration of its motions to set aside the guilty verdict pursuant to Rule 29(c) and to grant a new trial pursuant to Rule 33 is denied.  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano_____
JOEL A. PISANO
United States District Judge

Dated:  November 3, 2011

11